UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COYOTE LOGISTICS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 21-cv-6154 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| BAJAN ENTERPRISE, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER**

This case is about lost cheese. A supermarket chain needed to ship cheese across state lines, from Tennessee to Florida. Coyote Logistics LLC, a freight broker, coordinated the transportation and entrusted the cheese to Bajan Enterprise, Inc., a carrier.

The cheese never got there. Unfortunately, Bajan's tractor trailer got in an accident, and the cheese was a casualty. The cargo was a complete loss. The supermarket never received the cheese, so it deducted the price of the cheese from its payables to Coyote.

Coyote, in turn, didn't want to foot the bill for the demise of the dairy shipment. So it brought this action against Bajan, seeking to hold Bajan liable for its failure to deliver the product. Coyote brought a federal claim under the Carmack Amendment, and a state law claim for breach of contract based on an indemnification provision.

Bajan moved to dismiss the second count, arguing that the indemnification provision is unenforceable under an Illinois statute. For the reasons stated below, the motion to dismiss is denied.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff Coyote Logistics, LLC is a freight broker. *See* Cplt., at ¶¶ 1, 5 (Dckt. No. 1). It arranges the transportation of freight by motor carriers in interstate and foreign commerce. *Id.* at ¶ 1. It is authorized to act as a broker by the Federal Motor Carrier Safety Administration. *Id.*

On September 13, 2019, Coyote tendered a load of cheese to Defendant Bajan Enterprise, Inc. *Id.* at ¶ 5. Coyote gave custody of the cheese to Bajan in Tennessee. *Id.* Bajan's job was to haul the cheese to Florida. *Id.*

The complaint doesn't reveal anything about the cheese, except that there was a lot of it. The cheese filled a tractor trailer. And it came with a big price tag, too. The cheese apparently was worth tens of thousands of dollars. *Id.* at ¶ 8. That's a lot of cheese.

The cheese was in good shape when it left Tennessee. *Id.* at ¶ 6. But during transit, Bajan's tractor trailer was involved in an accident. *Id.* at ¶ 7. The complaint doesn't explain what happened or who was at fault. The cheese was deemed a loss. *Id.*

It was not cheap cheese. Publix Super Market, Inc. – the owner of the cheese – issued a damage claim for $88,660.56. *Id.* at ¶ 8. Publix deducted that amount from Coyote's payables as payment for the loss. *Id.* at ¶ 9.

Coyote, in turn, sued Bajan to recoup its losses. It brings two claims. First, Coyote claims that Bajan is liable for the loss of cheese under the so-called Carmack Amendment, 49

2

U.S.C. § 14706, a federal statute that allocates responsibility for losses in interstate shipping. *Id.* at ¶¶ 10–16. Second, in the alternative, Coyote brings a state law breach-of-contract claim. Coyote alleges that Bajan has breached its duty to indemnify under their Broker-Carrier Agreement. *Id.* at ¶¶ 17–22; *see also* Broker-Carrier Agreement (Dckt. No. 1-1).

Bajan moves to dismiss Count II, meaning the claim about the contractual duty to indemnify. *See* Def.'s Partial Mtn. to Dismiss (Dckt. No. 9). The gist of the argument is that the indemnification provision is unenforceable under Illinois law.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The complaint includes a breach of contract claim, so the contract itself is fair game.

3

**Analysis**

The dispute is about whether Coyote can pass along the costs of the failed delivery. Coyote seeks indemnification from Bajan for the loss of the cheese. And Bajan responds that the indemnification provision is unenforceable under Illinois law. *See* Def.'s Partial Mtn. to Dismiss (Dckt. No. 9); Def.'s Mem., at 1 (Dckt. No. 10). The parties agreed that Illinois law applies, and no one disputes it. *See* Broker-Carrier Agreement, at § 11.N (Dckt. No. 1-1, at 7 of 16).

Illinois law prohibits certain types of indemnification provisions in motor carrier transportation contracts. *See K. Miller Const. Co. v. McGinnis*, 238 Ill. 2d 284, 345 Ill. Dec. 32, 938 N.E.2d 471, 480 (2010); *see also Ruan Transp. Corp. v. Sentry Ins.*, 2018 WL 3869971, at *3–4 (N.D. Ill. 2018); *Burke v. John Maneely Co.*, 2016 WL 454330, at *2–3 (N.D. Ill. 2016); *Northland Ins. Co. v. Barnhart Crane & Rigging Co.*, 2013 WL 6859279, at *8 (N.D. Ill. 2013). Illinois law does not prohibit indemnification provisions generally. But it does prohibit indemnification when the first party wants to saddle the second party with the costs of the *first party's* own negligence and intentional misconduct. Specifically:

> Notwithstanding any other provision of law, a provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract that purports *to indemnify*, defend or hold harmless, or has the effect of indemnifying, defending or holding harmless, *the promisee* from or against any liability *for loss or damage resulting from the negligence or intentional acts or omissions of the promisee* is against the public policy of this State and is void and unenforceable.

*See* 625 ILCS 5/18c-4105(a) (emphasis added).

Simply put, an "agreement" to "indemnify" a party to a "motor carrier transportation contract" for "negligence or intentional acts or omissions" of the *promisee* is unenforceable. *Id.* A promisee cannot receive indemnification for the promisee's own negligence or bad acts.

Notice what the statute does, and what it doesn't do. The statute prohibits the promisee from recovering losses caused by the promisee's own negligence or intentional misconduct. But it doesn't prohibit indemnification agreements generally. If a party has a right to indemnification for some other reason, that contractual arrangement is fair game.

The phrase "motor carrier transportation contract" sweeps broadly. It covers a contract for (1) the transportation of property for compensation or hire by the motor carrier; (2) the entry on property to load, unload, or transport property; or (3) a service incidental to those activities, such as storage of property. *See* 625 ILCS 5/18c-4105(b)(1). So, just about any contract for hire involving moving, loading, unloading, and storing property counts.

There isn't a lot of case law about this particular statute. Only a few cases are out there, and they often acknowledge how it protects *carriers* from the negligence of *shippers*. "The purpose of such statutes 'is to rectify what many states . . . have perceived to be an inequitable "shift of risk" in the shipper and carrier relationship in motor carrier transportation contracts when a carrier is contractually required to indemnify a shipper for the shipper's own negligence.'" *See Burke*, 2016 WL 454330, at *3 (quoting *Ruiz v. Carmeuse Lime, Inc.*, 2011 WL 3439221, at *5 (N.D. Ind. 2011)). So the purpose is protecting carriers from paying for the shippers' negligence.

Reading the entire provision in isolation, and taking it at face value, one might think that carriers and shippers were on equal footing. That is, one might conclude that the statute protects both carriers and shippers. The statute reads like it prohibits carriers from indemnifying shippers for the shippers' own negligence, *and* prohibits shippers from indemnifying carriers for the carriers' own negligence. After all, the statute uses the all-inclusive word "promisee."

But a dive into the definitions shows that the statute did not pave a two-way street. The statute defines "promisee" to mean "the promisee and any agents, employees, servants, or independent contractors who are directly responsible to the promisee *except for motor carriers* party to a motor carrier transportation contract with promisee, and such motor carrier's agents, employees, servants or independent contractors directly responsible to the motor carrier." *See* 625 ILCS 5/18c-4105(b)(2) (emphasis added).

The phrase "except for motor carriers" means that carriers don't fall within the definition of "promisee." *Id.* Carriers aren't promisees, so there is no statutory ban on contractual provisions that require shippers to indemnify carriers for the carriers' own negligence. On the flipside, shippers *are* promisees, so a contractual provision that requires a carrier [*i.e.*, a promisor] to indemnify a shipper [*i.e.*, a promisee] for losses from the shipper's [*i.e.*, promisee's] own negligence is void. The upshot is that the statute protects carriers from contracts that require carriers to pay for the negligence of shippers, but does not protect shippers from contracts that require shippers to pay for the negligence of carriers.[1]

---

[1] Apparently, most states have adopted anti-indemnification statutes covering the transportation industry. Some statutes are a two-way street, and some statutes are a one-way street. That is, some statutes protect carriers from contracts that require carriers to pay for shippers' negligence *and* protect shippers from contracts that require shippers to pay for carriers' negligence. That's a two-way street. But some statutes protect *only* carriers from contracts that require carriers to pay for shippers' negligence, and do not offer comparable protection in the other direction. That's a one-way street. Iowa is a good example of a state with a two-way street, and North Dakota is a good example of a state with a one-way street (like Illinois). *Compare* ICA § 325B.1, *with* NDCC § 22-02-10; *see also* Gregory D. Podolak, *Contractual Indemnity: Anti-Indemnity Statutes and Additional Insured Coverage*, Saxe, Doernberger & Vita, P.C. (August 27, 2018), https://www.sdvlaw.com/insights/contractual-indemnity-anti-indemnity-statutes-and-additional-insured-coverage ("On a basic level, the transportation anti-indemnity laws function the same as the construction anti-indemnity laws: they impose limitations on the [liabilities] assumed by the contracting parties. The rationale behind these laws in this industry is identical to that in construction: there was a need to protect downstream parties, like truckers and other motor carriers with little to no bargaining power, from absorbing most of the risk. To date, 45 states have enacted motor carrier transportation anti-indemnity laws. Generally, these statutes take one of two forms: (1) they prohibit requirements in indemnification agreements where the motor carrier must indemnify the non-motor carrier, usually a shipper or broker, for liability arising out of the non-motor carrier's negligent or intentional acts; or (2)

The Broker-Carrier Agreement at issue here includes language that fits within the statute. The agreement includes an indemnification clause that requires Bajan (the carrier, meaning the company hauling the cheese) to indemnify Coyote (the broker) for losses. "CARRIER [*i.e.*, Bajan] agrees to be responsible for, and to defend, indemnify and hold BROKER [*i.e.*, Coyote] . . . harmless of and from any and all claims, liabilities, demands, actions and causes of action, suits at law and proceedings in equity . . . which may arise from or in connection with the operations performed or to be performed pursuant to this Agreement, without regard to fault or negligence on the part of CARRIER . . . ." *See* Broker-Carrier Agreement, at § 10 (Dckt. No. 1-1, at 6 of 16).

The provision is sweeping, covering claims "of any nature" and "howsoever arising," including "all losses, damages (including, but not limited to: consequential, speculative, direct, indirect and punitive damages), personal injury, death and/or loss or damage to cargo or other property, and/or claim for any such loss or occurrence." *Id.* Bajan has to indemnify Coyote "without regard to fault or negligence on the part of" Bajan. *Id.*

That general provision is the starting point, creating a duty to indemnify as the baseline. But a later provision ratchets it back. Bajan has no duty to indemnify when Coyote – and Coyote alone – was negligent. "The indemnifications . . . shall NOT have application in instances when the claim, demand, liability, or expense results directly from the sole negligence of BROKER [*i.e.*, Coyote]." *Id.* (all caps in original). So when Coyote is 100% at fault, Bajan is off the hook.

The Broker-Carrier Agreement thus includes a sweeping indemnification provision, and it covers just about anything and everything. Bajan has a duty to indemnify, and that duty covers "all losses, damages . . . and/or loss or damage to cargo or other property." *Id.* And it doesn't

---

they prohibit indemnification provisions in motor carrier contracts that have the effect of indemnifying an indemnitee for the indemnitee's negligent or intentional acts.").

7

matter if Bajan was blameless, because the duty applies "without regard to fault or negligence on the part of CARRIER [*i.e.*, Bajan] . . . ." *Id.* The only exception is if the losses stem from the "sole negligence of BROKER [*i.e.*, Coyote]." *Id.*

For present purposes, the most important thing is that the agreement requires Bajan to indemnify Coyote for losses caused by negligence, unless Coyote is 100% responsible because of its own negligence. And that's where the agreement goes off the rails and runs into trouble. Again, under Illinois law, a motor carrier transportation contract cannot require the carrier to indemnify the shipper for the shipper's own negligence. And that's what this contract does: it requires Bajan to indemnify Coyote for Coyote's own negligence (again, unless Coyote is 100% to blame).

The contract, at least in part, runs afoul of the Illinois anti-indemnification statute. It requires Bajan to indemnify Coyote for losses, even if the losses stem primarily from Coyote's own negligence and misconduct. To that extent, the provision runs headlong into the text of the statute.

Even so, that's not exactly the situation here. Coyote isn't trying to recover losses from Bajan for Coyote's own negligence. Or, at the very least, there's no suggestion of that in the complaint, which is all that matters. It is not as if Coyote was negligent, and wants Bajan to pay for Coyote's own negligence.

And, the provision does more than require Bajan to indemnify Coyote for Coyote's own negligence and bad acts. It basically requires indemnification for just about anything. So it covers Coyote's own negligence. But it covers lots of other situations, too.

Putting it all together, the contract includes a sweeping indemnification provision, and part of that provision runs afoul of Illinois law. The contract requires Bajan to indemnify Coyote

8

for Coyote's own negligence, but Illinois law prohibits such an agreement. But by all appearances, Coyote is not invoking that provision to recoup something that it cannot recover under Illinois law. Coyote cannot receive indemnification for Coyote's own negligence, but it seems that Coyote isn't trying to do that anyway.

The question, then, is what to do about the fact that the provision, at least in part, runs afoul of Illinois law. Does the rest of the indemnification provision survive? From a textual perspective, does the baby get thrown out with the bathwater? Or does the indemnification provision otherwise remain intact, except to the extent that it violates Illinois law?

Another provision of the contract provides the answer. The Broker-Carrier Agreement includes a severability provision, and it confirms that unenforceable text can be thrown overboard without sinking the rest of the terms. "In the event any of the terms of this Agreement are determined to be invalid or unenforceable, no other terms shall be affected and the unaffected terms shall remain valid and enforceable as written." *See* Broker-Carrier Agreement, at § 11.J (Dckt. No. 1-1, at 6 of 16).

Illinois courts enforce such severability provisions. *See, e.g.*, *1030 W. N. Ave. Bldg., LLC v. The Firm, LLC*, 2022 IL App (1st) 200588-U, at ¶ 34 (2022) ("Here, both the mortgage and separate assignment had severability clauses, which 'certainly strengthens the case for the severance of the unenforceable provisions because [they] indicate that the parties intended for the lawful portions of the contract to be enforced in the absence of the unlawful portions.'") (quoting *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 189 Ill. Dec. 288, 619 N.E.2d 1337, 1343 (1993)); *First Peek Ultrasound L.L.C. v. Weideman*, 2018 IL App (1st) 18-0858-U, at ¶ 48 (2018) ("[T]he presence of a severability clause in a contract strengthens the case for the severance of unenforceable provisions because it indicates that the parties intended for the lawful

portions of the contract to be enforced in the absence of the unlawful portions."). Parties can agree *ex ante* to lop off what doesn't pass muster, and keep the rest.

Taking a step back, and viewing everything as a whole, the breach of contract claim lives to fight another day. Coyote wants indemnification from Bajan for the costs of the failed delivery of the cheese. Under the agreement, Coyote is entitled to indemnification, unless Coyote is seeking indemnification for Coyote's own negligence. That arrangement would violate Illinois law. *See Burke*, 2016 WL 454330, at \*3 (noting that the indemnification agreement was "void and unenforceable" only "to the extent" that it allowed the shipper to evade liability for its own negligence). But that doesn't seem to be the situation here. In the end, the indemnification provision might be too broad – meaning that it entitles Coyote to something that Illinois law prohibits – but that overbreadth does not doom the entire provision, thanks to the severability provision.

For now, the breach of contract claim survives. This Court has no reason to think that Coyote is attempting to recover losses caused by Coyote's own negligence or intentional misconduct. If that's right, then the claim can go forward. Illinois law does not prohibit indemnification for other losses, meaning losses for something other than the promisee's own foul-ups. If Coyote is, in fact, attempting to get indemnification for Coyote's own negligence or bad acts, then Bajan can raise that argument again at a later time. In the meantime, the claim can roll forward.

## Conclusion

For the foregoing reasons, the motion to dismiss is denied.

Date:   June 8, 2022

                                                    Steven C. Seeger
                                                    United States District Judge